

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-25-00093-CR
_____

JUSTIN TREMANE SIMON, Appellant

V.

THE STATE OF TEXAS, Appellee

_____

On Appeal from the 4th District Court
Rusk County, Texas
Trial Court No. CR24-286

_____

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

A Rusk County jury found Justin Tremane Simon guilty of aggravated robbery and assessed a sentence of seventy years' imprisonment. *See* TEX. PENAL CODE ANN. § 29.03(a)(3)(A). Simon appeals, arguing that (1) the State failed to prove Simon's identity as the perpetrator of the aggravated robbery beyond a reasonable doubt and (2) the trial court committed reversible error by submitting a jury instruction in the punishment charge advising jurors that Simon's parole eligibility could be hastened by the award of good-conduct time. We affirm the judgment below.

## I.    The Evidence at Trial

The evidence shows that a tall, masked African American man, wearing a yellow reflective construction vest and a dark-colored hoodie, entered the Strong-Hurt Pharmacy shortly after 7 a.m. on the morning of September 16, 2024, demanding money and drugs. The robber brandished what appeared to be a handgun[1] and aimed it at Tommy Strong, the 78-year-old owner of the pharmacy, threatening to kill him and two other employees if they did not comply with his demands. Fearing for their lives, Strong and the employees complied and handed over ten stock bottles of controlled substances (hydrocodone, promethazine, and alprazolam). In addition to the pills, the robber also took the cellphones belonging to Strong and the two employees. The robber then fled the store, running in the direction of South Mill Street.

When police arrived at the scene, Strong's wife tracked her husband's stolen cellphone to the 100 block of South Mill Street, a neighborhood a few blocks away from the pharmacy. The

---

[1]The robber had stuffed a black sock with stucco, or building material, and shaped it to look like a gun.

cellphone pinged at various addresses on South Mill Street before becoming disabled. Testimony at trial demonstrates that the cellphone became disabled at either 108 or 110 South Mill Street, which are neighboring houses.

With that information, officers searched several houses in the 100 block, including 108 South Mill Street. Some of the homes were vacant, while others were occupied by people who did not fit the description of the robber. Aware that a person matching the robber's description resided at 110 South Mill Street, police obtained a search warrant and prepared to enter the residence. The home at 110 South Mill Street was owned by Simon's mother. When the police arrived at her home, Simon's mother called Simon and handed the phone to an officer standing outside. When the officer asked about his whereabouts, Simon stated that he was out of town. However, upon entering the residence, police found Simon and detained him. Approximately two hours had passed between the time of the alleged offense and Simon's arrest.

While the police did not locate the stolen cellphones or the construction vest, they did find ten stock bottles containing hydrocodone, promethazine, and alprazolam pills under Simon's mattress. At trial, the Strong-Hurt Pharmacy manager testified that stock bottles are delivered directly to pharmacies from the manufacturer and are never given to the general public. The manager was also able to match eight of the ten bottles found under Simon's mattress to the Pharmacy's inventory list, confirming that they were taken during the robbery. Along with the pills, a dark-colored hoodie, which was damp as if it had just been worn, was found in Simon's closet. The police checked the interior walls of the closet to ensure that a water leak had not

3

caused the hoodie to become damp. Simon was then booked into the county jail, where a hydrocodone pill was found in his pants pocket.

After hearing that evidence, the jury convicted Simon of aggravated robbery.

## II. Sufficiency of the Evidence

In his first point of error, Simon challenges the sufficiency of the State's evidence to prove beyond a reasonable doubt that he was guilty of aggravated robbery.

### A. Standard of Review

"The due process guarantee of the Fourteenth Amendment requires that a conviction be supported by legally sufficient evidence." *Braughton v. State*, 569 S.W.3d 592, 607 (Tex. Crim. App. 2018) (citing *Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979)). "In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007))).

"In our review, we consider 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common

4

design to do the prohibited act.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13). "It is not required that each fact 'point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13). "Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone." *Id.* (citing *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* at 298 (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240). A person commits aggravated robbery if, during the commission of robbery, he:

> (1) causes serious bodily injury to another;
>
> (2) uses or exhibits a deadly weapon; or
>
> (3) causes bodily injury to another person or threatens or places another person in fear of imminent bodily injury or death, if the other person is:
>
> > (A) 65 years of age or older; or
> >
> > (B) a disabled person."

5

TEX. PENAL CODE ANN. § 29.03(a).[2]  Here, the State alleged that

> on or about the **16th** day of **September, 2024** . . . [Simon] did then and there while in the course of committing theft of property and with intent to obtain or maintain control of the property, intentionally and knowingly threaten or place Tommy Strong, a person [sixty-five] years of age or older, in fear of imminent bodily injury or death[.]

**B.  Discussion**

Simon urges the Court to find that his conviction was unsupported by legally-sufficient evidence.  Highlighting the lack of physical evidence tying him to the scene of the robbery, Simon characterizes the case against him as resting solely on the discovery of the pills in his room.  As such, he contends that the State presented only a "mere modicum" of evidence identifying him as the robber.  That does not accurately reflect *all* of the evidence presented at trial.

"The State may prove a defendant's identity and criminal culpability by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence." *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016); *see also Ingerson v. State*, 559 S.W.3d 501, 509 (Tex. Crim. App. 2018) ("Identity may be proven by . . . circumstantial evidence[] or by reasonable inferences from the evidence.").  When reviewing circumstantial evidence, "[e]ach fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.  Courts have highlighted certain circumstances that allow a jury to

---

[2]Aggravated robbery incorporates the elements of the lesser offense of robbery.  TEX. PENAL CODE ANN. §§ 29.02, 29.03(a).  A person commits a robbery "if, in the course of committing a theft . . . and with intent to obtain or maintain control of the property, he:  (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death."  TEX. PENAL CODE ANN. § 29.02(a).

6

draw an inference of guilt, such as when a defendant is found in possession of recently stolen property without explanation. *Rollerson v. State*, 227 S.W.3d 718, 725 n.18 (Tex. Crim. App. 2007). Lying to police officers also shows a "consciousness of guilt" and may be considered as circumstantial evidence of the same. *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000) (holding that making false statements to cover up a crime is evidence indicating "consciousness of guilt" and is admissible to prove commission of offense); *Torres v. State*, 794 S.W.2d 596, 598 (Tex. App.—Austin 1990, no pet.) (holding that conduct after crime indicating defendant's "'consciousness of guilt' is . . . one of the strongest kinds of evidence of guilt").

Taken together, the incriminating circumstances in this case amount to more than a "mere modicum" of evidence tying Simon to the robbery. Simon, who matched the general description of the robber, was found (1) in the same residence where the stolen cellphone's last known location was consistent with being present; (2) in possession of hydrocodone, promethazine, and alprazolam pills that were uniquely attributable to the Pharmacy; (3) within hours of the robbery; and (4) after having lied to the police about his whereabouts. Moreover, the police found an article of clothing matching the robber's description in Simon's closet, which was damp as if it had just been worn, and a hydrocodone pill in his pants pocket.

We find that the evidence was sufficient to support a rational inference that Simon perpetrated the aggravated robbery that occurred on September 16, 2024. We overrule Simon's first point of error.

## III. Charge Error

In his second issue, Simon contends that the trial court committed reversible error by submitting a jury instruction advising jurors that Simon's parole eligibility could be hastened by the award of good-conduct time and then inviting the jury to consider the existence of good-conduct time when assessing Simon's sentence.

### A. Standard of Review

"We employ a two-step process in our review of alleged jury-charge error." *Murrieta v. State*, 578 S.W.3d 552, 554 (Tex. App.—Texarkana 2019, no pet.) (citing *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994)). "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal." *Id.* (quoting *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.) (citing *Abdnor*, 871 S.W.2d at 731–32)).

"[T]he jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby." *Id.* (alteration in original) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.13). "A trial court must submit a charge setting forth the 'law applicable to the case.'" *Id.* (quoting *Lee v. State*, 415 S.W.3d 915, 917 (Tex. App.—Texarkana 2013, pet. ref'd) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14)).

> The purpose of the jury charge . . . is to inform the jury of the applicable law and guide them in its application. It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and prevent confusion.

*Id.* (quoting *Lee*, 415 S.W.3d at 917 (quoting *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007))).

8

**B.    The Jury Charge Incorrectly Referenced Good-Conduct Time**

The jury charge at the punishment phase read in relevant part as follows:

The length of time for which a defendant is imprisoned may be reduced by the award of parole.

Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, *may earn early parole eligibility through the award of good conduct time*. Prison authorities *may award good conduct time* to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, the defendant will not become eligible for parole until the actual time served *plus any good conduct time earned* equals one-half of the sentence imposed or [thirty] years, whichever is less. Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

*You may consider the existence of the parole law and good conduct time*. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

(Emphasis added).

However, under Texas law, Simon's parole eligibility must be considered "without consideration of good conduct time." *See* Tex. Gov't Code Ann. § 508.145(d)(1)(A), (d)(2) (Supp.). Further, Simon's charged offense—aggravated robbery—is listed in Article 42A.054(a) of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 42A.054(a)(11) (Supp.). As such, the trial court was required to give the instruction set forth in Article 37.07,

9

Section 4(a) of the Texas Code of Criminal Procedure, which omits all references to good-conduct time.[3] Thus, the charge incorrectly advised the jury that Simon could earn early parole eligibility through the award of good-conduct time and that the existence of good-conduct time could be considered.

Failure to give this "mandatory" charge is error. *Cormier v. State*, 955 S.W.2d 161, 164 (Tex. App.—Austin 1997, no pet.) (explaining that "failure to give this mandatory instruction is charge error subject to *Almanza*[4] analysis"); *Sanders v. State*, 448 S.W.3d 546, 548 (Tex. App.—San Antonio 2014, no pet.). Accordingly, this Court must now assess whether the error was harmful.

---

[3]Article 37.07, Section 4(a) provides:

> In the penalty phase of the trial of a felony case in which the punishment phase is to be assessed by the jury rather than the court, if the offense of which the jury has found the defendant guilty is . . . an offense listed in Article 42A.054(a), . . . the court shall charge the jury in writing as follows:
>
> "The length of time for which a defendant is imprisoned may be reduced by the award of parole.
>
> "Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, the defendant will not become eligible for parole until the actual time served equals one-half of the sentenced imposed or [thirty] years, whichever is less. If the defendant is sentenced to a term of less than four years, the defendant must serve at least two years before the defendant is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.
>
> "It cannot accurately be predicted how the parole law might be applied to this defendant if sentenced to a term of imprisonment, because the application of that law will depend on decisions made by parole authorities.
>
> "You may consider the existence of the parole law. You are not to consider the manner in which the parole law may be applied to this particular defendant."

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a) (Supp.).

[4]*See Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984), *superseded on other grounds by rule as stated in Rodriguez v. State*, 758 S.W.2d 787 (Tex. Crim. App. 1988).

## C. The Erroneous Charge Did Not Result in Egregious Harm.

"The level of harm necessary to require reversal due to jury charge error is dependent upon whether the appellant properly objected to the error." *Murrieta*, 578 S.W.3d at 555 (citing *Abdnor*, 871 S.W.2d at 732).

> Here, because [Simon] did not object to the charge, we will not reverse [the judgment] unless the record shows the error resulted in egregious harm, *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005) (citing *Almanza v. State*, 686 S.W.2d [at 171] (op. on reh'g)), such that he did not receive a fair and impartial trial.

*Id.* (citing *Almanza*, 686 S.W.2d at 171; *Loun v. State*, 273 S.W.3d 406, 416 (Tex. App.—Texarkana 2008, no pet.)).

"Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Id.* (quoting *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007)). "In making this determination, we review 'the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information in the record as a whole.'" *Id.* (quoting *Villarreal v. State*, 205 S.W.3d 103, 106 (Tex. App.—Texarkana 2006, pet. dism'd, untimely filed) (citing *Almanza*, 686 S.W.2d at 171)). "Direct evidence of harm is not required to establish egregious harm." *Id.* (citing *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)).

Thus, when conducting the harm analysis, we review the following factors:  (1) the charge itself, "(2) the state of the evidence, including contested issues and [the] weight of [the] probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the . . . record of the trial as a whole." *Villarreal*, 453 S.W.3d at 433.

Under the first factor, we review the punishment charge in its entirety. As discussed above, the jury charge contained erroneous instructions. However, even though the charge instructed the jury that it could consider the existence of good conduct time, it then admonished the jury that it was not to consider the extent to which "good[-]conduct time may be awarded to or forfeited" by Simon. The Texas Court of Criminal Appeals has recognized that such curative instructions can, in combination with other factors, cure error. *See Igo v. State*, 210 S.W.3d 645, 647 (Tex. Crim. App. 2006).

Moreover, egregious harm requires actual harm, and the record does not show that the jury changed the assessed punishment based on any future and potential good-conduct time. Absent such a showing, we must presume that the jury followed the jury instructions. *See Taylor v. State*, 332 S.W.3d 483, 492 (Tex. Crim. App. 2011); *Murrieta*, 578 S.W.3d at 556. Therefore, the first factor weighs against a finding of egregious harm.

The second factor requires a consideration of the evidence at trial. In the guilt-innocence phase, the State presented sufficient evidence to support a conviction. As for the punishment phase, the punishment range for the offense of aggravated robbery is either imprisonment for life or for a term of not less than five years but no more than ninety-nine years. *See* TEX. PENAL CODE ANN. § 12.32(a). In this case, the State sought a life sentence, and the jury assessed a sentence of seventy years' imprisonment. While such a sentence is on the higher end of the punishment range for the convicted offense, the State presented compelling evidence in the punishment phase to support that sentence. *See Igo*, 210 S.W.3d at 647. Specifically, the State put on evidence of Simon's lengthy criminal history. Simon had four prior felony convictions,

12

which included possession of a controlled substance, escape while arrested/confined, evading arrest with a vehicle, and theft from a person. With regard to the felony theft, Simon had been indicted for aggravated robbery, in which he had both threatened serious bodily injury and used a firearm. As such, the evidence at trial did not weigh in favor of finding egregious harm.

The third factor examines the arguments of counsel. Although the State did not reference "good[-]conduct time" in its arguments, the defense did—both through witness testimony and in closing argument. In particular, Simon presented testimony from a retired parole officer, Stanley Gaines, who testified to the mechanics of the parole system as follows:

> A. When I looked at the statute of the aggravated cases, you have to do at least half of the sentence. Now, when I say you have to do half, it's not really half. Because you have things what you call is "good time." Good time can -- a person was convicted for ten years here. All right. Because he has good behavior on the unit where he's convicted, that good time can come into play bringing down that ten years.
>
> . . . .
>
> Q. But isn't it true that even if a person reaches half of their time --
>
> A. They have to be released.
>
> Q. But it's not guaranteed?
>
> A. It's not guaranteed. Nothing is guaranteed
>
> . . . .
>
> Q. Okay. So if someone says, like, hey, if you give him [thirty] years, within that half year (sic) he can come up for parole, it's no guarantee, is there?
>
> A. There's no guarantee.

Simon's counsel further stated in closing arguments at the punishment phase that:

[The State is] asking for life. And you know it's aggravated. And you know even though if you give him life, [Simon] probably doesn't come up for parole until [thirty-five] years. And you heard Mr. Gaines state even if a person has good-time credit, it's up to the parole board to make that decision, because somebody can write in and say, no, we don't want [Simon] out. [Simon] can spend the rest of his time in prison for life with [the State] asking for a life sentence.

      Is this a serious charge? Yes.

      . . . . But to walk away and just . . . throw away [Simon's] life for life, when the evidence only showed the pills at his house, I beg to differ.

      . . . . If you give him 25 years, I have a feeling somebody is going to write in every time he comes up for parole to keep him in. . . . [Simon] will do his entire time.

While Gaines's testimony incorrectly conflated "good time" with Simon's parole eligibility, the proposition that Simon's counsel elicited from Gaines—that even when a defendant "come[s] up for parole," release is not guaranteed—is a correct statement of the law. The record, therefore, reflects a defense strategy aimed at discouraging parole speculation and urging the jury to assume that Simon would serve the entire assessed sentence. In effect, Simon's counsel echoed the charge's admonition that jurors were not to consider how parole law might apply to Simon personally. *See Hogan v. State*, 440 S.W.3d 211, 218 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (defense's closing argument mentioning parole did not weigh in favor of egregious harm finding, as it was only mentioned "to explain that the jury is not to consider the manner in which parole law might apply to appellant"). Under these circumstances, the arguments of counsel do not weigh in favor of egregious harm.

The fourth factor considers any other circumstances in the record. One such circumstance courts often look at is whether the jury made any inquiry about good-conduct time

or sought clarification regarding the charge.  *See Alaniz v. State*, 648 S.W.3d 657, 664 (Tex. App.—Eastland 2022, no pet.); *Murrieta*, 578 S.W.3d at 556.  The record in this case reveals no jury notes or any other indication that the jury sought further clarification regarding good-conduct time or parole.  Thus, nothing suggests that the jury was influenced or misled by the instructions in the punishment charge.

We conclude that all four factors weigh against a finding of egregious harm and overrule Simon's second issue on appeal.

## IV.    Conclusion

Accordingly, we affirm the trial court's judgment.


Charles van Cleef
Justice

Date Submitted:     February 13, 2026
Date Decided:       April 27, 2026

Do Not Publish