

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-20-00050-CR
_____


NOLAN TURNER, Appellant

V.

THE STATE OF TEXAS, Appellee


_____

On Appeal from the 5th District Court
Bowie County, Texas
Trial Court No. 17F0520-005

_____


Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

A Bowie County jury found Nolan Turner guilty of continuous sexual abuse of a young child, Kathy Smith,[1] and assessed a sentence of thirty years' imprisonment. *See* TEX. PENAL CODE ANN. § 21.01. On appeal, Turner argues that the trial court erred in excluding expert testimony on the lack of medical evidence to support the allegations, commented on the weight of the evidence by supplementing an Article 38.07 instruction, and used an impermissibly coercive *Allen*[2] charge. Turner also argues that the bill of costs erroneously included $500.00 in fees "when applicable."

While we conclude that (1) there was no abuse of discretion in the exclusion of expert testimony, (2) Turner was not egregiously harmed by any comment on the weight of the evidence, and (3) the *Allen* charge was not impermissibly coercive, (4) we modify the bill of costs to reflect the imposition of $634.00 in court costs in the judgment, delete the remaining cost from the bill of costs, and affirm the trial court's judgment.

At trial, thirteen-year-old Kathy testified that she was routinely abused when she was in the third grade by Turner, who watched her and her brother after school. Kathy testified that the first time Turner made her do "uncomfortable stuff" was when he took her hand and placed it on his privates underneath his clothes. Although her brother was also in the room, Kathy testified that he was on a computer facing the other way.

---

[1] We use pseudonyms for the victim and her family to protect the identity of the child. *See* TEX. R. APP. P. 9.10(a)(3).

[2] *See Allen v. United States*, 164 U.S. 492, 501 (1896).

According to Kathy, the abuse became worse. Kathy told the jury that Turner touched her hand to his penis several times on different occasions and did something inappropriate "[p]retty much everyday after school." Kathy said that Turner touched his private to her private underneath a blanket, put his private in her private and in her "bootie," grabbed her private and "like stretch[ed] it out and stuff," and "st[u]ck his finger in the hole of [her] private and" moved it back and forth. Kathy also said Turner would suck on her chest and neck, leaving marks on her body. According to Kathy, her mother saw one of the marks, but Turner claimed it was a bug bite. Kathy testified that she was afraid to tell her mother of Turner's abuse. The abuse ended after eleven-year-old Kathy told her mother, Susan, that she had "bumps on [her] heinie and it hurt[] really bad."

When Susan investigated Kathy's privates she saw "little red bumps" that raised a "red flag . . . that maybe somebody had been messing with [Kathy]." When asked by Susan if someone had sexually abused her, Kathy told Susan that Turner had touched her "down on [her] heinie" and had "put his privates to [her] heinie." The allegation reminded Susan that she had seen bruising on Kathy's neck one time when picking the child up from Turner's house, joked with Turner that the bruise looked like a hickey, and was told by Turner that the child was bitten by a bug.[3] Susan and her husband, Richard, called the police and met with investigators.

Chris Sutherland, an investigator with the Bowie County Sheriff's Office, said that Kathy reported that Turner had put his penis in her vagina many times. Susan had also told police that

---

[3]During cross-examination, Susan testified that Kathy's grades and extracurricular activities never changed, that her son never saw or heard any sexual abuse by Turner, and that, aside from one mark on Kathy's neck, she never saw bleeding, bruising, cuts, or other signs of sexual abuse on Kathy, who often did not let her mother see her body. Susan also testified that a civil lawsuit was filed against Turner as a result of the allegations.

Kathy said she was "touched in the vagina with [Turner's] hands and penis." Kathy was sent to the Texarkana Children's Advocacy Center (CAC) to speak with Jessica Kelley, a forensic interviewer. Kelley testified that Kathy made allegations of abuse during her interview; provided many sensory details of the sexual abuse, including that Turner had put his private into her privates and bootie; and was consistent in the core details she had provided.

Kathy was taken to a sexual assault nurse examiner (SANE), Brandi Wilson, who heard and recorded Kathy's disclosure of sexual abuse by Turner. According to Wilson, Kathy said,

> [Turner] sexually abused me. He put his private in my front private and my back part. He kissed my neck and sucked my chest area. He's done it since I was in the third or fourth grade. After he does it he tells me I can have whatever I want. He never gives me anything, but I don't ask. He always is like you need to tell me what you like so I can do it to you more. I never say anything because I don't like it. I remember when he first started I was sitting in a recliner. He picked me up on the chair and put me in his lap. He pulled his private out and made me touch it. . . . I remember one time he stuck his fingers all the way in me and it hurt.

Because Kathy did not indicate that any abuse had occurred within ninety-six hours before the SANE examination, Wilson did not use a rape kit to collect DNA evidence, a decision which Kathy Lach, another SANE, testified was in accordance with normal practices. Wilson testified that Kathy had "some dried, circular, red lesions" on her vagina, but clarified that blood tests ruled out the possibility of any sexually transmitted diseases. Wilson said that the physical examination was normal and that there was no medical evidence of any sexual assault. However, she added that she rarely found injuries during her SANE examination and that sexual assaults do not always leave signs of trauma or injury.

4

Sutherland and Robbie McCarver, supervisor of the Criminal Investigation Division of the Bowie County Sheriff's Office, interviewed Turner about the allegations. They both testified that Turner denied the allegations and that they did not collect any DNA evidence or other physical evidence of sexual assault. However, they were both struck by Turner's lack of emotion and calm demeanor during the interview, which was shown to the jury. Turner's ex-wife, who divorced Turner after hearing about Kathy's allegations, also said that she did not see the type of reaction from Turner that she expected. She testified that, other than one incident when she found Kathy on Turner's lap under a blanket, she saw nothing unusual between them.

After hearing this evidence, the jury convicted Turner of continuous sexual abuse of Kathy.

*(1)     There Was No Abuse of Discretion in the Exclusion of Expert Testimony*

After the State rested its case-in-chief, Turner attempted to call Dr. Jack McCubbin, a retired gynecologist, as an expert witness. The State objected and asked to take McCubbin on voir dire because it did not know the substance of his testimony. Outside of the jury's presence, McCubbin informed the trial court that he wished to testify that there was no medical evidence of sexual assault or a diagnosis of a sexually transmitted disease. Because Wilson, Sutherland, McCarver, and Lach had all testified to the same, the State objected that McCubbin's testimony was irrelevant and cumulative. Since it was uncontested that there was no medical evidence of sexual assault and that Kathy did not have a sexually transmitted disease, the trial court sustained the State's objection because it found McCubbin's testimony cumulative. In his first point of

5

error on appeal, Turner argues that the exclusion of McCubbin's testimony was erroneous. We disagree.

"We review a trial court's decision to admit or exclude evidence for an abuse of discretion." *Flowers v. State*, 438 S.W.3d 96, 103 (Tex. App.—Texarkana 2014, pet. ref'd) (citing *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010)). "Abuse of discretion occurs only if the decision is 'so clearly wrong as to lie outside the zone within which reasonable people might disagree.'" *Id.* (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g))). "We may not substitute our own decision for that of the trial court." *Id.* (citing *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)). "We will uphold an evidentiary ruling if it was correct on any theory of law applicable to the case." *Id.* (citing *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009)).

While Turner argues that McCubbin's testimony was relevant, his brief does not adequately address the trial court's ruling that the testimony was cumulative. A trial court is "well within its discretion to exclude . . . proffered evidence under Rule 403 because it [is] cumulative of" other evidence. *Buntion v. State*, 482 S.W.3d 58, 81 (Tex. Crim. App. 2016) (citing TEX. R. EVID. 403); *see Blalock v. State*, 728 S.W.2d 135, 137 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd) ("If the import of improperly excluded evidence is conveyed to the trier of fact through other evidence, no error is shown.") (citing *Geders v. United States*, 425 U.S. 80, 87 (1976)).

Moreover, when evaluating harm from the erroneous exclusion of evidence, we "need only determine whether or not the error affected a substantial right of the defendant." *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000); s*ee* TEX. R. APP. P. 44.2(b). Substantial rights are not affected by the erroneous admission or exclusion of evidence "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). Because several witnesses had already testified to the substance of McCubbin's testimony, Turner failed to show that he was harmed by its exclusion. *Anderson v. State*, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986) (to show harm, excluded evidence must be controlling on material issue and not cumulative of other evidence).

We overrule this point of error.

*(2)     Turner Was Not Egregiously Harmed by Any Comment on the Weight of the Evidence*

A conviction for continuous sexual assault of a child "is supportable on the uncorroborated testimony of the victim of the sexual offense." TEX. CODE CRIM. PROC. ANN. art. 38.07(a). During deliberations, the jury sent a note to the trial court asking, "What is the one witness rule, explain." In response to the jury's question, the trial court provided a supplemental charge stating, "A conviction for Continuous Sexual Abuse of a Child is supportable on the uncorroborated testimony of the complainant of the sexual offense, if believed beyond a reasonable doubt." On appeal, Turner argues that the trial court's response commented on the weight of the evidence because it drew attention to Kathy's testimony and its submission was not supported by law.

7

"We employ a two-step process in our review of alleged jury charge error." *Murrieta v. State*, 578 S.W.3d 552, 554 (Tex. App.—Texarkana 2019, no pet.) (citing *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994)). "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal." *Id.* (quoting *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.) (citing *Abdnor*, 871 S.W.2d at 731–32)).

"A trial court's substantive answer to a jury question during deliberations is considered an additional or supplemental instruction to the jury that is governed by the requirements of article 36.14 of the Code of Criminal Procedure." *Hernandez v. State*, 340 S.W.3d 55, 60 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Daniell v. State*, 848 S.W.2d 145, 147 (Tex. Crim. App. 1993)). Pursuant to Article 36.14, a trial court must submit a "written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." TEX. CODE CRIM. PROC. ANN. art. 36.14.

"A trial court comments on the weight of the evidence if the charge 'assumes the truth of a controverted issue,' *Whaley v. State*, 717 S.W.2d 26, 32 (Tex. Crim. App. 1986), or 'directs undue attention' to particular evidence," *Giesberg v. State*, 945 S.W.2d 120, 124 (Tex. App.—Houston [1st Dist.] 1996) (citing *Hawkins v. State*, 656 S.W.2d 70, 73 (Tex. Crim. App. 1983), *aff'd*, 984 S.W.2d 245 (Tex. Crim. App. 1998)); *Lacaze v. State*, 346 S.W.3d 113, 118 (Tex. App—Houston [14th Dist.] 2011, pet. ref'd). "An instruction, albeit facially neutral and legally

8

accurate, may nevertheless constitute an improper comment on the weight of the evidence." *Kirsch v. State*, 357 S.W.3d 645, 651 (Tex. Crim. App. 2012). Even where an instruction does not "'pluck out' any specific piece of evidence for special attention," it may constitute a comment on the weight of the evidence if it "improperly focus[ed] the jury on the type of evidence that would support a finding" sought by the State. *Id.*

In the context of the one-witness-rule instruction, our sister courts have concluded that use of the term "victim" in the instruction assumes the truth of the State's allegation and, therefore, constitutes an impermissible comment on the weight of the evidence. *Hernandez*, 340 S.W.3d at 61; *Veteto v. State*, 8 S.W.3d 805, 817 (Tex. App.—Waco 2000, pet. ref'd), *abrogated on other grounds by State v. Crook*, 248 S.W.3d 172 (Tex. Crim. App. 2008). Here, the trial court's instruction referred to the "complainant," not the victim.

Even so, our sister courts have found that a one-witness-rule instruction that does not assume the truth of the State's allegation still constitutes a comment on the weight of the evidence because it draws the jury's attention to particular evidence. *Jimenez v. State*, No. 13-13-00066-CR, 2016 WL 6804454, at *3 (Tex. App.—Corpus Christi Nov. 17, 2016, pet. ref'd) (mem. op., not designated for publication) (also finding there was no authority to include the instruction, which "routinely converts to a question during jury selection to determine whether prospective jurors are challengeable for cause" in the jury charge on guilt/innocence) (citing *Lemasters v. State*, 297 S.W.2d 170, 171–72 (Tex. Crim. App. 1956) (holding that the trial court improperly commented on the weight of the evidence by instructing the jury that a person may be convicted of keeping a policy game based on the uncorroborated testimony of an

9

accomplice—even when a statute authorized the defendant's conviction based on such testimony, stating: "[the statute] was passed for the guidance of trial and appellate courts in passing on the sufficiency of the evidence[,] but . . . the Legislature did not intend that the jury be instructed in accordance with the terms thereof")); *Wesbrooks v. State*, No. 05-09-00093-CR, 2010 WL 3222184, at *2 (Tex. App.—Dallas Aug. 17, 2010, pet. ref'd) (mem. op., not designated for publication) (finding that a one-witness-rule instruction constituted a comment on the weight of the evidence because it "singled out the complaining witness's testimony"); *Veteto*, 8 S.W.3d at 817 (same); *Hernandez v. State*, No. 03-03-00758-CR, 2004 WL 2110396, at *5 (Tex. App.—Austin Sept. 23, 2004, no pet.) (mem. op., not designated for publication) (same).[4] Assuming error in the submission of the supplemental one-witness-rule instruction, we turn to the issue of harm.

"The level of harm necessary to require reversal due to jury charge error is dependent on whether the appellant properly objected to the error." *Murrieta*, 578 S.W.3d at 555 (citing *Abdnor*, 871 S.W.2d at 732). When the trial court informed Turner of the jury's request for an explanation of the one-witness rule, Turner urged the court to respond with a note stating it could not answer the question and argued that the Legislature did not intend for the rule to be a part of the jury instructions. Yet, Turner did not argue that submission of the supplemental charge would constitute a comment on the weight of the evidence or that it would do so because it

---

[4]"Although unpublished opinions have no precedential value, we may take guidance from them 'as an aid in developing reasoning that may be employed.'" *Rhymes v. State*, 536 S.W.3d 85, 99 n.9 (Tex. App.—Texarkana 2017, pet. ref'd) (quoting *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd)).

would draw the jury's attention to Kathy's testimony.[5]  As a result, we will not reverse the judgment "unless the record shows the error resulted in egregious harm, *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)), such that he did not receive a fair and impartial trial." *Id.* (citing *Almanza*, 686 S.W.2d at 171; *Loun v. State*, 273 S.W.3d 406, 416 (Tex. App.—Texarkana 2008, no pet.)).

"Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Id.* (quoting *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007)).  "In making this determination, we review 'the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information in the record as a whole.'" *Id.* (quoting *Villarreal v. State*, 205 S.W.3d 103, 106 (Tex. App.—Texarkana 2006, pet. dism'd, untimely filed) (citing *Almanza*, 686 S.W.2d at 171)). "Direct evidence of harm is not required to establish egregious harm." *Id.* (citing *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)).

Turner focuses on the one-witness-rule instruction and argues that he was harmed because it focused the jury's attention on Kathy's testimony.  Also, even though the one-witness rule was included as a supplemental instruction, it was a correct statement of the law.  *See*

---

[5]Turner also argued that if the trial court was inclined to submit the instruction, it could submit an instruction saying "that a jury can convict someone based on the testimony of only one witness as long as the jury believes that witness beyond a reasonable doubt."  Citing Turner's proposed language for the instruction and cases requiring that the defendant detail the specific grounds for why an instruction constitutes a comment on the weight of the evidence because a general objection is insufficient to preserve error, the State argues that Turner waived the issue for appeal. *Harrington v. State*, 424 S.W.2d 237 (Tex. Crim. App. 1968); *Andrews v. State*, 774 S.W.2d 809, 811–12 (Tex. App.—Eastland 1989, pet. ref'd).  We disagree.  Because failure to properly object merely impacts the harm analysis when considering jury-charge error, we conclude that Turner's lack of a proper and specific objection merely results in an evaluation for egregious harm.

11

*Aschbacher v. State*, 61 S.W.3d 532, 538 (Tex. App.—San Antonio 2001, pet. ref'd) (observing that, "[g]enerally, 'a correct statement of the law by the trial court, even during trial, is not reversible' as a comment on the weight of the evidence") (quoting *Powers v. State*, 737 S.W.2d 53, 54 (Tex. App.—San Antonio 1987, pet. ref'd)). As a result, Turner cannot show that the instruction was reasonably calculated to benefit the State or to prejudice his rights to a fair trial. *See id.*

Also, "[t]he trial court's response to the jury's question must be reviewed in the context of the entirety of the court's charge." *Hernandez*, 340 S.W.3d at 63. The jury charge on guilt/innocence contained no other errors, properly instructed the jury on the presumption of innocence and the State's burden of proof, and reminded the jurors that they were "the exclusive judges of the facts proved, the credibility of the witnesses, and the weight to be given their testimony" and could "believe all, any part, or none of the testimony of any witness." These instructions "ensured that the jury understood that [Turner] could not be convicted unless the State presented *credible* testimony, whether through one or more witnesses, establishing each and every element of the crime beyond a reasonable doubt." *Jimenez*, 2016 WL 6804454, at *4. We further note that the instruction was not included in the application portion of the jury charge, which authorizes the jury to act. *Id.* (citing *Hutch v. State*, 922 S.W.2d 166, 172 (Tex. Crim. App. 1996) (observing that charge error appearing in the application portion of a jury charge is especially egregious because, in contrast to the abstract portion, the application portion of the jury charge is the section that actually authorizes the jury to act)); *see Hernandez*, 340 S.W.3d at 63. Viewing the charge in its entirety, we find that the supplemental one-witness-rule

12

instruction "did not override or contradict the other parts of the charge that correctly instructed the jury as to the presumption of evidence and the burden to prove all elements of the charged offenses beyond a reasonable doubt." *Hernandez*, 340 S.W.3d at 63.

Turning to the state of the evidence, we disagree with Turner's conclusion that it was weak. In addition to Kathy's detailed testimony, "[t]he State brought forth other witnesses and circumstantial evidence that corroborated [Kathy's] testimony" and mitigated any harm from the supplemental instruction. *Id.* Susan testified that she had once witnessed what looked like a hickey on Kathy's neck while picking the child up from Turner's house. Susan said Kathy told her that Turner had touched her "down on [her] heinie" and had "put his privates to [her] heinie." Sutherland testified that Kathy reported that Turner had put his penis in her vagina many times and that Susan said that Kathy told her she was "touched in the vagina with [Turner's] hands and penis." Kelley, the CAC interviewer, testified that Kathy made allegations of abuse during her interview, provided many sensory details of the sexual abuse, including that Turner had put his private into her privates and bootie, and was consistent in the core details she had provided. Wilson, the SANE nurse, recited the sexual abuse history Kathy disclosed to her during the SANE examination, including Kathy's statements that Turner had placed his penis in her vagina and anus and his fingers in her vagina. Turner's ex-wife testified that she had found Kathy on Turner's lap under a blanket. From these witnesses, the jury was able to determine the consistency of Kathy's allegations. Even though there was a lack of physical or medical evidence supporting the allegations, we find that the state of the evidence strongly supported the jury's finding of guilt. *See id.* at 63.

13

Next, both the State and Turner discussed the one-witness rule during voir dire and opening statements. While the State also discussed the one-witness rule in closing, it focused on summarizing the evidence and emphasized that the jury had to believe beyond a reasonable doubt that Turner committed continuous sexual abuse in order to convict. All of these arguments "preceded the error identified by [Turner's] appeal, which occurred after the presentation of all evidence and the final arguments of counsel." *Id.* at 64. Thus, "[t]here was no opportunity for the State to present any argument capitalizing on or exacerbating the effect of the trial court's" comment on the weight of the evidence and, "[a]ccordingly, the arguments of counsel did not cause the erroneous instruction to become egregious." *Id.*

After reviewing the entire record, we conclude that the supplemental one-witness-rule instruction did not deprive Turner of a fair and impartial trial. The jury charge required the jury to believe Kathy's allegations beyond a reasonable doubt, did not lower the State's burden of proof, and contained an application paragraph that required the jury to find every element of the offense proven beyond a reasonable doubt. The jury's verdict of guilt was supported by Kathy's direct testimony, corroborating testimony of the State's other witnesses, and circumstantial evidence supporting Kathy's credibility. No such error was exacerbated by arguments of counsel, because it would have occurred after closing arguments. Because there was no egregious harm, we overrule this point of error. *See id.* at 64–65.

14

*(3)* *The* Allen *Charge Was Not Impermissibly Coercive*

It is well settled that the length of time a jury deliberates is discretionary with the trial court. TEX. CODE CRIM. PROC. ANN. art. 36.31; *Montoya v. State*, 810 S.W.2d 160, 166 (Tex. Crim. App. 1989)). "An *Allen* charge is usually given in response to a specific request by the jury for additional guidance when the jury is deadlocked." *Taylor v. State*, 173 S.W.3d 851, 854 (Tex. App.—Texarkana 2005, no pet.) (citing *West v. State*, 121 S.W.3d 95, 107 (Tex. App.— Fort Worth 2003, pet. ref'd)). "To prevail on a complaint that an *Allen* charge is coercive, an accused must show that jury coercion or misconduct likely occurred or occurred in fact." *Id*. "An *Allen* charge is unduly coercive and therefore improper if it pressures jurors into reaching a particular verdict or improperly conveys the court's opinion of the case." *Id.* We examine the *Allen* charge for coercive effect on juror deliberation "in its context and under all the circumstances." *Lowenfield v. Phelps*, 484 U.S. 231, 237 (1988).

The jury began deliberating at 11:00 a.m. but informed the trial court that it was not unanimous. In response to the jury's first note notifying the trial court that it could not come to a unanimous verdict, the trial court instructed the jury, at 2:18 p.m., to continue its deliberations. The jury sent another note asking, "Is there a way to have a juror dismissed if the other jurors believe someone is not following the law?" At 3:21 p.m., the trial court responded, "The Court cannot answer that question. Please continue to deliberate." The jury responded by immediately returning another note asking, "What can be done about a juror that says they believe some of what the victim says then changes their mind about not believing anything the victim says when asked to deliberate," prompting the trial court's response, "The Court cannot answer that

15

question. Please continue to deliberate." The jury sent two more notes about Kathy's testimony, resulting in a portion of the testimony being read back to them, and another note asking for the recorded interrogation, which the trial court provided. After 4:34 p.m., the jury sent its eighth note, stating, "Hung 11-1," which resulted in the trial court's submission of an *Allen* charge.[6]

An *Allen* charge is coercive on its face if it amounts to a coercive attempt to force the minority position to accede to the majority position, but "a charge that speaks to the jury as a whole is not coercive on its face." *Freeman v. State*, 115 S.W.3d 183, 187 (Tex. App.—Texarkana 2003, pet. ref'd). The charge here "addresse[d] the jury as a whole and [did] not single out any specific juror or jurors," "simply encourage[d] the jury to reach a verdict and ask[ed] the jurors to re-examine their views," and reminded the jurors not to surrender

---

[6]The trial court's *Allen* charge read:

> Your foreperson has advised the court that you are having difficulty reaching a unanimous verdict.
>
> If this jury finds itself unable to arrive at a unanimous verdict, it will be necessary for the court to declare a mistrial and discharge this jury. The indictment will still be pending, and it is reasonable to assume that the case will be tried again before another jury at some future time. Any such future jury will be empaneled in the same way this jury has been empaneled and will likely hear the same evidence that has been presented to this jury. The questions to be determined by that jury will be the same questions confronting you, and there is no reason to hope the next jury will find these questions any easier to decide than you have found them.
>
> It is your duty as a juror to keep your mind open and free to every reasonable argument that may be presented by your fellow jurors so that this jury may arrive at a verdict that justly answers the consciences of the individuals making up this jury.
>
> You should not have any pride of opinion and should avoid hastily forming or expressing an opinion. At the same time, you should not surrender any conscientious views founded on the evidence unless convinced of your error by your fellow jurors.
>
> With this additional instruction, you are requested to continue deliberations in an effort to arrive at a verdict that is acceptable to all members of the jury, if you can do so without doing violence to your conscience. Do not do violence to your conscience, but continue deliberating.

16

conscientious views founded on the evidence or to do violence to their conscience. *Id.* at 187. Turner does not argue that the language of the *Allen* charge is coercive on its face, and as in *Freeman*, we find that it is not.

"If an *Allen* charge is not coercive on its face, an appellant has the burden to show that jury misconduct occurred in fact." *Id.* Turner argues that the *Allen* charge was impermissibly suggestive because it caused the lone holdout to immediately cave in. This type of bare assertion is insufficient to meet the requirement to show that jury coercion or misconduct likely occurred or occurred in fact. *Aguilar v. State*, No. 02-18-00175-CR, 2018 WL 4140741, at *2 (Tex. App. —Fort Worth Aug. 30, 2018, pet. ref'd) (mem. op., not designated for publication) (rejecting defendant's argument "that the jury 'immediately' returned a guilty verdict after receiving the *Allen* charge, thus evidencing that the instruction had a coercive effect on the lone holdout juror"). Moreover, the record does not support Turner's argument.

The jury deliberated for several hours before reporting that it was "[h]ung 11-1." In *Taylor*, this Court found that an *Allen* charge worded like the one issued here was not impermissibly suggestive, even though the jury had reported that it was split eleven to one. *Taylor*, 173 S.W.3d at 855. In *Taylor*, the jury deliberated approximately two hours after receiving the *Allen* charge. Here, the record does not indicate how long the jury deliberated after receiving the *Allen* charge. As in *Freeman*, Turner presents no evidence of coercion caused by the combined effect of the *Allen* charge and acceptance of a verdict. *See Freeman*, 115 S.W.3d at 187. Instead, Turner "simply speculates that the combined effect of the two actions created coercion." *Id.* Under the circumstances presented in this case, we conclude that Turner "has not

17

shown that jury coercion or misconduct likely occurred or occurred in fact." *Taylor*, 173 S.W.3d at 855; *see Freeman*, 115 S.W.3d at 187. Therefore, we overrule this point of error.

*(4)     We Modify the Bill of Costs*

Turner also challenges the bill of costs. The trial court's judgment assessed a total of $634.00 in court costs. In addition to the uncontested court costs of $234.00, the clerk's bill of costs contained the following additional fees, "when applicable": a $10.00 fee for taking and approving bond, a $40.00 jury fee, a $100.00 emergency medical services fee, a $250.00 fee for DNA testing, and a $100.00 fee for the child abuse prevention fund. Turner argues that, because the bill of costs states that the fees apply only "when applicable," all of these fees should be deleted. The State concedes that the emergency services fee listed in the bill of costs is unconstitutional and should be deleted from the bill of costs, but otherwise argues that the remaining fees, which total $634.00, are supported by the record.[7]

When a criminal action is appealed, the Texas Code of Criminal Procedure provides that "an officer of the court shall certify and sign a bill of costs stating the costs that have accrued and send the bill of costs to the court to which the action or proceeding is . . . appealed." TEX. CODE CRIM. PROC. ANN. art. 103.006. Turner does not challenge the sufficiency of the evidence supporting any assessment of court costs. Instead, he argues that none of the additional fees have been imposed because they are listed under the heading "when applicable." We disagree. The trial court determined that all of the fees, except for the emergency services fee, were applicable when it assessed $634.00 in court costs, and Turner does not challenge that finding. As a result,

---

[7]*See Casas v. State*, 524 S.W.3d 921, 927 (Tex. App.—Fort Worth 2017, no pet.).

18

we will affirm the court costs imposed in the judgment. However, because the bill of costs also contains the emergency services fee, we modify the bill of costs by deleting that $100.00 fee.

We modify the bill of costs by deleting the $100.00 emergency services fee and by conforming it with the recitation in the judgment that only $634.00 in court costs were imposed. We affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted:     October 13, 2020
Date Decided:       November 25, 2020

Do Not Publish