

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0703-23

**STEVEN JAMES ELSIK, Appellant**

**v.**

**THE STATE OF TEXAS**

**ON THE STATE'S PETITION FOR DISCRETIONARY REVIEW
FROM THE FOURTH COURT OF APPEALS
MCMULLEN COUNTY**

SLAUGHTER, J., delivered the opinion of the Court in which HERVEY, RICHARDSON, YEARY, NEWELL, KEEL, WALKER, and MCCLURE, JJ., joined. KELLER, P.J., dissented.

## O P I N I O N

Even though attorneys are officers of the court, their unsworn statements generally are not evidence. When an attorney's statement is based on personal knowledge, however, such a statement may be considered evidence. In this case, at Appellant's trial for 13 counts of human smuggling, the prosecutor told the trial court that he believed the

witnesses/victims had been deported and were therefore unavailable to testify. But he also admitted that he assumed they had been deported, did nothing to verify that deportation had in fact occurred, and also did nothing to determine whether he could procure the witnesses' testimony or presence at trial. Relying on the prosecutor's conclusory statements, the trial judge found the witnesses "unavailable" and admitted their hearsay statements regarding their names, dates of birth, and nationalities under Texas Rule of Evidence 804(b)(3)—the "Statement of Personal or Family History" exception to the hearsay rule. On direct appeal, the court of appeals held that the trial judge abused her discretion by admitting such hearsay testimony in the absence of evidence to establish that the Rule 804(a)(5) criteria for finding a witness unavailable were met. The court further found that, while such error was not harmful as to Appellant's 11 third-degree-felony convictions for human smuggling, it was harmful as to Appellant's two second-degree-felony convictions for smuggling of a minor. The basis for this conclusion was that, with respect to Appellant's convictions for smuggling of minors, the hearsay statements were required to prove an essential element of the second-degree-felony offense—namely, that the victim was younger than 18 years of age. The court therefore reversed Appellant's two second-degree-felony smuggling convictions and remanded for a new trial on those counts. Because we agree with the court of appeals that the prosecutor's statements in this case were insufficient to demonstrate the witnesses' unavailability under Rule of Evidence 804(a)(5), we affirm its decision.

I.      **Background**

On July 22, 2021, Deputy David Gardner of the McMullen County Sheriff's Office saw a heavily-weighted-down U-Haul pickup truck traveling down the highway, and he decided to conduct a weight inspection. He activated his emergency lights and siren, but the truck did not immediately pull over. Instead, it quickly accelerated and sped down the highway for several miles until it eventually pulled over and stopped.

Deputy Gardner drew his service weapon and conducted a "felony takedown" of the driver, Appellant Steven James Elsik. After placing Appellant in custody, Deputy Gardner "noticed blankets covering the bed of the truck and [what] appeared to be movement with people hiding underneath the blankets." He called for backup. Once backup arrived, the officers removed the blankets and discovered 12 individuals lying in the bed of the truck. One additional passenger was traveling in the front passenger seat, for a total of 13 passengers. The passengers were removed from the vehicle and taken into custody.

U.S. Border Patrol Supervisor Alfonso Gonzales arrived at the sheriff's office, where all 13 passengers were in custody. Agent Gonzales spoke with the 13 passengers, all of whom identified themselves as Mexican citizens. Of the 13, two self-identified as juveniles: a 17-year-old female and a 17-year-old male. Border Patrol took custody of the 13 individuals and transported them to the Freer Border Patrol checkpoint station. Though not entirely clear from the record, it appears that the passengers were eventually deported: Gonzales testified at trial that the 11 adults "were returned to Mexico," and the two juveniles "were not allowed to stay."

A grand jury indicted Appellant on two counts of second-degree smuggling of persons under 18 years of age (counts 1–2); 11 counts of third-degree smuggling of adults

(counts 3–13); and one count of third-degree evading arrest with a motor vehicle (count 14).[1] The cases proceeded to a jury trial.

### A. Trial

During trial, the State called Agent Gonzales to testify, in part, about the 13 passengers' statements disclosing their names, nationalities, and dates of birth.[2] Appellant raised a hearsay objection,[3] asserting that no hearsay exception applied and that the State failed to prove under Texas Rule of Evidence 804 that the passengers were unavailable. Thus, because the State failed to prove the passengers' unavailability, Agent Gonzales could not testify as to what they told him. The prosecutor countered:

> Well if I asked the Sheriff, gave him a subpoena to go into Mexico and serve the subpoenas there I think he would look at me in askance and askew and tell me he doesn't have jurisdiction to serve subpoenas over there in Mexico and I'm not going to waste his time.
>
> Once they were deported we're not the federal government. We do not have the ability to hold onto them. They were outside our jurisdiction and outside our reach. And we were unable to get them and find them to even issue a subpoena.

The State then argued that based on the witnesses' unavailability, the statements were admissible under Rule 804(b)(3), the "Statement of Personal or Family History" exception

---

[1] *See* TEX. PENAL CODE §§ 20.05(b)(1)(B) (counts 1–2), 20.05(b) (counts 3–13), 38.04 (count 14) (West 2019). Since the date of Appellant's offense, the Legislature has twice amended the smuggling statute, Penal Code Section 20.05. We cite the version that was in effect from September 1, 2015, to August 31, 2021. *See* Acts 2015, 84th Leg., ch. 333 (H.B. 11), § 14, eff. Sept. 1, 2015.

[2] Notably, the smuggling provision at issue here did not require proof of nationality. It required only that "the person, with the intent to obtain a pecuniary benefit, knowingly: (1) uses a motor vehicle . . . to transport an individual with the intent to: (A) conceal the individual from a peace officer . . ." TEX. PENAL CODE § 20.05(a)(1)(A) (West 2019). And, only Counts I and II, which involved the alleged juvenile passengers, required proof of age.

[3] Appellant also objected under the Confrontation Clause, but that issue is not before us.

to the hearsay rule. But, other than the comments above, the State offered nothing else to support its assertion that the passengers were unavailable. Nevertheless, the trial court overruled Appellant's objection, finding the passengers unavailable and their identities within Agent Gonzales's personal knowledge.

The jury convicted Appellant on all counts. It sentenced him to 99 years' imprisonment on the two counts of second-degree smuggling of persons under 18 years of age; 20 years' imprisonment on each of the third-degree smuggling counts; and five years' imprisonment on the evading arrest count. Appellant timely appealed the smuggling convictions.

### B.    Court of Appeals' Opinion

On direct appeal, the Fourth Court of Appeals affirmed the trial court's judgment as to all but Counts I and II (smuggling of persons under age 18), which it reversed and remanded to the trial court for a new trial. *Elsik v. State*, 678 S.W.3d 360, 363 (Tex. App.—San Antonio 2023) (substitute op. upon denial of reh'g). The court of appeals held that the trial court abused its discretion by admitting Agent Gonzales's hearsay testimony and that the error affected Appellant's substantial rights as to the second-degree smuggling counts which required proof of age (under 18). *Id.* at 370. Regarding error, the court of appeals observed that the only evidence of the passengers' ages came from their statements to Agent Gonzales, which constituted hearsay. Thus, to be admissible, the statements had to fall within a hearsay exception. The State had relied on Rule 804(b)(3), claiming that these were statements of personal or family history. Rule 804 exceptions, however, require that the witness be unavailable. The court of appeals reasoned that, "to establish that a witness

is 'unavailable' under Rule 804(a)(5), the proponent of the testimony must demonstrate that a good-faith effort was made prior to trial to locate and present the witness." *Id.* at 367 (collecting Texas intermediate appellate court cases). It also noted that "[a]n unsworn statement by counsel is not competent evidence." *Id.* (citing *State v. Lopez*, 631 S.W.3d 107, 115 (Tex. Crim. App. 2021)). Thus, the State, as the testimony's proponent, "failed to present any evidence" that satisfied the unavailability requirement. *Id.* Without evidence of the declarants' unavailability, the court of appeals held that the trial court abused its discretion in admitting their statements under Rule 804. *Id.*

Shifting to a harm analysis, the court of appeals applied the standard applicable to non-constitutional error under Texas Rule of Appellate Procedure 44.2(b). *See id.* at 368–70 (citing *Cook v. State*, 665 S.W.3d 595 (Tex. Crim. App. 2023)). It held that Agent Gonzales's testimony disclosing the adults' statements did not warrant reversal because names, dates of birth, and nationalities are not elements of the third-degree smuggling of persons offense. *Id.* at 368.Therefore, that testimony had no or just a slight effect on those convictions. *Id.* Agent Gonzales's testimony disclosing the juveniles' statements, however, went "to the heart of the State's case" for the second-degree smuggling charges because the State had to prove the juveniles' ages. *Id.* at 368–69. The only evidence of the juveniles' age was their purported statements regarding their dates of birth made to Agent Gonzales. *See id.* The court of appeals further noted that even though Agent Gonzales testified that he confirmed the "juveniles'" names and ages with the Mexican Consulate, he also admitted that noncitizens sometimes provide false information and that there have "been occasions where there are adults that claim to be juveniles." *Id.* at 369. Weighing all the

factors, the court of appeals concluded that the trial court's error in admitting the juveniles' hearsay statements regarding their age "did influence and had more than a slight effect on the second-degree smuggling of juveniles convictions." *Id.* at 370 (citations omitted).

The State timely filed this petition for discretionary review. We granted review on two grounds: first, whether the fact that a witness is a foreign national who is no longer in this country and is without legal authority to enter is itself sufficient to show unavailability of the witness for purposes of the hearsay exceptions in Texas Rule of Evidence 804; and second, whether statements by a prosecutor, as an officer of the court, may be considered reliable for purposes of a preliminary question concerning the admissibility of evidence under Rule 104(a). We address these grounds below in reverse order.[4]

## II.     Analysis

We decline the State's invitation to, in essence, adopt two *per se* evidentiary rules in this case. First, under the circumstances, the prosecutor's statements were not a reliable basis for determining the admissibility of the evidence. When determining questions of admissibility, the trial court may consider admissible and inadmissible evidence, provided that such evidence is both relevant and reliable.[5] Here, the prosecutor failed to demonstrate personal knowledge of the declarants' unavailability, so his statements were not evidence. And, despite the prosecutor's role as an officer of the court, his statements, without more,

---

[4] We did not grant review of the court of appeals' harm analysis, and so we do not consider that issue in this opinion.

[5] *See* TEX. R. EVID. 104(a) (providing that a court must decide "any preliminary question" about admissibility of evidence and, "[i]n so deciding, the court is not bound by evidence rules, except those on privilege").

did not constitute an inherently reliable basis upon which the trial court could have inferred the witnesses' unavailability.

Second, the State failed to establish the declarants' unavailability. The State asks us to adopt a bright-line rule that all witnesses who have been deported are categorically unavailable for purposes of Rule 804. But the State has not presented any persuasive facts or argument to support the adoption of such a rule. Thus, the State was required to meet the Rule 804 standard in this case. To prove unavailability under Texas Rule of Evidence 804(a)(5), the hearsay proponent must demonstrate an inability to procure the declarant's attendance or testimony by process or other reasonable means. Even assuming that process was not a viable option (because the witnesses were located in another country), the State needed to demonstrate that it had "not been able" to procure the witnesses' attendance *or* testimony through "other reasonable means." TEX. R. EVID. 804(a)(5). "Reasonable means" requires more than making assumptions and doing nothing. The State failed to establish unavailability when it took no steps to determine whether it could secure the declarants' attendance or testimony. The court of appeals indicated that the State was required to demonstrate that it made a "good-faith effort" to obtain the declarants' trial attendance. *Elsik*, 678 S.W.3d at 367. In that, it erred, because the hearsay at issue did not overlap with the Confrontation Clause, and the "good faith" standard derives from the Confrontation Clause. Nevertheless, to establish unavailability under Rule 804, the State needed to demonstrate that it undertook "reasonable means" to secure the declarants' attendance or testimony, and it failed to do so here.

A.    **Standard of Review**

This Court reviews a trial court's decision to admit hearsay under an abuse of discretion standard. *See Coffin v. State*, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994). The trial court abuses its discretion if its decision lies outside the zone of reasonable disagreement. *Kelly v. State*, 824 S.W.2d 568, 574 (Tex. Crim. App. 1992).

**B.  Under Rule of Evidence 104(a), the trial court may consider both admissible and inadmissible evidence in deciding questions of admissibility, provided that such evidence is relevant and reliable. The prosecutor's representations here were not evidence, nor were they reliable.**

Texas Rule of Evidence 104 addresses a trial judge's gatekeeping function. As it pertains to this case, it provides that "[t]he court must decide any preliminary question about whether . . . evidence is admissible." TEX. R. EVID. 104(a). In determining the threshold issue of *whether* evidence is admissible at trial, the trial judge may consider both admissible and inadmissible evidence. *Id.* (stating that the trial judge, in deciding whether evidence is admissible, is not bound by the rules of evidence). But despite the fact that a judge may consider inadmissible evidence to determine the preliminary question of whether evidence is admissible for trial purposes, the trial judge must still "ensure that all evidence admitted at trial is relevant, reliable, and admissible under the pertinent legal principles." *Ford v. State*, 305 S.W.3d 530, 535–36 (Tex. Crim. App. 2009).  Therefore, the trial judge's ruling to admit or exclude evidence must be based upon whether the factual information submitted by the parties is relevant and reliable, even if the underlying factual information would itself be inadmissible at trial. *Id.* at 539 (holding that unsworn offense report contained "sufficient indicia of reliability" to serve as basis for trial court's ruling denying motion to suppress evidence).

As to the prosecutor's assertion to the trial court that the "juvenile" witnesses were unavailable, we need not address relevance because the prosecutor's statements relate directly to the unavailability of the passenger declarants. *See* TEX. R. EVID. 401, 402. Thus, we will only address: (1) whether the prosecutor's statements constituted "evidence," and (2) whether the statements were reliable.

### 1. The prosecutor's statements were not evidence because he failed to demonstrate that he had any personal knowledge about the declarants' unavailability.

A prosecutor's on-the-record, unobjected-to, unsworn statements are ordinarily not evidence. *Gonzales v. State*, 435 S.W.3d 801, 811 (Tex. Crim. App. 2014); *State v. Guerrero*, 400 S.W.3d 576, 585 (Tex. Crim. App. 2013).[6] However, such statements "may be considered as evidence . . . if the attorney 'is speaking from first-hand knowledge.'" *Gonzales*, 435 S.W.3d at 811 (quoting *Guerrero*, 400 S.W.3d at 585). Thus, the question is whether the prosecutor here had first-hand knowledge of the declarants' availability status. He did not.

The prosecutor's only statements regarding the witnesses' availability were the following:

> Well if I asked the Sheriff, gave him a subpoena to go into Mexico and serve the subpoenas there I think he would look at me in askance and askew and tell me he doesn't have jurisdiction to serve subpoenas over there in Mexico and I'm not going to waste his time.

> Once they were deported we're not the federal government. We do not have the ability to hold onto them. They were outside our jurisdiction and outside

---

[6] The record shows that defense counsel did not object to the prosecutor providing the basis for admissibility, so the oath requirement for testimony is waived. *See Mathis v. Lockwood*, 166 S.W.3d 743, 745 (Tex. 2005).

our reach. And we were unable to get them and find them to even issue a subpoena.

The first paragraph reads as a hypothetical situation presented to the trial judge to justify why the State did not seek a subpoena. This indicates that the State made no effort to determine whether process was feasible. The second paragraph demonstrates that the prosecutor simply assumed he had no way to procure the witnesses' attendance or testimony and therefore took no measures to do so. Hypotheticals, assumptions, and inaction fail to demonstrate that the prosecutor had any first-hand knowledge about whether the declarants' attendance could have been secured. His statement regarding unavailability, therefore, was conclusory.

The State directs us to *State v. McGuire*, 689 S.W.3d 596 (Tex. Crim. App. 2024) (plurality op.), as support for the general proposition that the trial court can and should rely on unsworn prosecutorial statements when deciding whether to admit evidence. *McGuire,* however, is distinguishable because the *McGuire* prosecutors demonstrated their personal knowledge of the relevant facts. In *McGuire*, a plurality of this Court agreed that the State's attorneys demonstrated personal knowledge about the difficulties of obtaining a nighttime warrant in Fort Bend County and, therefore, "the existing factual record sufficiently established that exigent circumstances exist[ed]." *Id.* at 605. The factual record of the pre-trial hearing included information that the prosecutors: (1) had personal experience obtaining nighttime warrants in Fort Bend County; (2) usually experienced difficulty and unpredictability in doing so; (3) detailed the process that they undertake in attempting to obtain a nighttime warrant; and (4) gave examples of the challenges they faced in obtaining

nighttime warrants. *Id.* at 607. Thus, the circumstances in *McGuire* illustrate that the prosecutors had first-hand knowledge about the subject matter of their representations—the "general added difficulty of getting a warrant at night" in Fort Bend County. *See id.*[7] By contrast, in this case, the prosecutor provided no factual support to establish his personal knowledge and instead advanced a hypothetical situation and an unsupported conclusory statement. Nothing in the record demonstrates that the prosecutor had first-hand knowledge on the issue of the passengers' unavailability.

In the alternative, the State invites us to make a presumptive inference that the opinion testimony of a prosecutor is sufficient to lay the admissibility predicate, even when personal knowledge is "not spelled out in the evidence." However, a presumption is inappropriate here because, as we have already indicated, the State did not present any underlying facts that could give rise to a finding of the declarants' unavailability. *See, e.g., Ex parte Speckman,* 537 S.W.3d 49, 53 n. 4 (Tex. Crim. App. 2017) (stating that a presumption is "'[a] legal inference or assumption that a fact exists because of the *known or proven existence of some other fact or group of facts*.'") (quoting BLACK'S LAW DICTIONARY 1376 (10th Ed. 2014)) (emphasis added). In this case there are no "other facts" upon which to base such an inference or assumption of unavailability, so a presumption as to that fact cannot apply. Given the record before us, the prosecutor failed to demonstrate that he possessed first-hand knowledge of the declarants' unavailability.

---

[7] We note that in *McGuire*, the exigency issue was never argued before the trial court. *McGuire*, 689 S.W.3d at 603–04. We instead reviewed the record and found sufficient evidence to conclude that exigent circumstances existed. *Id.* at 604–07.

### 2. A prosecutor's statements are not *per se* reliable.

The State also asserts that because the prosecutor is an officer of the court, the trial court should be permitted to draw an inference that he was reliable in asserting that the witnesses were unavailable. It relies, in part, on *Holloway v. Arkansas,* in which the United States Supreme Court recognized that "attorneys are officers of the court, and 'when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath.'" 435 U.S. 475, 485–86 (1978) (quoting *State v. Brazile*, 75 So.2d 856, 860–61 (La. 1954)). But the Supreme Court also noted that its *Holloway* holding does not "preclude a trial court from exploring the adequacy of the basis of [] counsel's representations . . ." *Id.* at 487. Moreover, as *Holloway* indicated, the circumstances surrounding an attorney's declarations come into play.

In *Holloway*, defense counsel represented three separate codefendants. After receiving confidential information from his clients, he determined that there might be a conflict of interest if he continued to represent all three. He, therefore, requested that the trial court appoint separate counsel for each of the codefendants, citing conflict-of-interest concerns and stating only that "one or two of the defendants may testify and if they do, then I will not be able to cross-examine them because I have received confidential information from them." *Id.* at 478. He was unable to provide the court with more information because he risked violating "his duty of confidentiality to his clients." *Id.* at 485. The trial court denied the request. The Supreme Court held that by denying the defense attorney's request for separate counsel, the trial court's action deprived the codefendants of their right to the assistance of counsel. *Id.* at 484. It pointed to opinions from various

states and noted that a trial court should accept as true an attorney's assertion that a conflict of interest exists. *Id.* at 485 (citing to various cases and quoting *State v. Davis*, 514 P.2d 1025, 1027 (Ariz. 1973) ("[An] attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial.")).

In its brief on discretionary review, the State notes that this Court cited *Holloway* in *Guerrero*, 400 S.W.3d 576, for the proposition that the request for appointment of separate counsel "should have been granted without inquiring into confidential information." The State fails to recognize that in both *Holloway* and *Guerrero*, the attorney's representation that a conflict of interest existed was not entirely conclusory. It was based upon the attorney's own personal knowledge gained through discussions with his client. The attorney was simply prohibited by confidentiality rules from disclosing the underlying factual basis for his conflict-of-interest assertion to the court. Thus, *Holloway* and *Guerrero* indicate it may be appropriate for the court to find an attorney's statements inherently reliable, and decline to inquire further into the underlying circumstances, when there is reason for the court to believe that the statements are based on the attorney's personal knowledge (and, in particular, where confidentiality concerns are present).

By contrast, in this case, the prosecutor's conclusory statements were not based on his personal knowledge, nor were they rooted in any facts. Therefore, they did not constitute reliable evidence from which the judge could reasonably infer a finding of unavailability. Courts should not blindly treat all representations by a prosecutor as reliable

for purposes of determining the admissibility of evidence. We decline the State's request for such a *per se* rule.

### C. The State failed to prove under Rule 804 that the declarant passengers were unavailable.

Hearsay is inadmissible unless it falls within an exception. TEX. R. EVID. 801 (defining hearsay); TEX. R. EVID. 802 (stating the rule against hearsay); TEX. R. EVID. 803 (providing hearsay exceptions regardless of witness availability). Rule 804 sets forth the exceptions to the rule against hearsay whenever the declarant is unavailable as a witness. TEX. R. EVID. 804.

In seeking to admit the passengers' statements to Agent Gonzales regarding their names, dates of birth, and nationalities, the State relied upon one such exception found in Rule 804(b)(3), "Statement of Personal or Family History." That rule creates a hearsay exception for an unavailable witness's statement about "the declarant's own birth, adoption, legitimacy, ancestry, marriage, divorce, relationship by blood, adoption or marriage, or similar facts of personal or family history[.]" TEX. R. EVID. 804(b)(3)(A). Rule 804(a) states five different ways in which a declarant may be found "unavailable." For purposes of this case, we look to Rule 804(a)(5):

> A declarant is considered to be unavailable as a witness if the declarant: . . .
>
> (5) is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure the declarant's attendance or testimony.

TEX. R. EVID. 804(a)(5).

The State, as the proponent of the challenged evidence, "ha[d] the burden of establishing [its] admissibility." *Vinson v. State*, 252 S.W.3d 336, 340 (Tex. Crim. App.

2008). Because preliminary questions about the admissibility of evidence are determined by the trial court, *see* TEX. R. EVID. 104(a), the State was required to establish admissibility "by a preponderance of proof," *Vinson*, 252 S.W.3d at 340 n.14 (quoting *Bourjaily v. United States*, 483 U.S. 171, 175 (1987)). Once Appellant objected, the State was required to "demonstrate that the proffered evidence [overcame] the stated objection." *Id.* at 340 (citing *Idaho v. Wright*, 497 U.S. 805, 816 (1990)).

### 1. The State, as the evidence's proponent, failed to satisfy Rule 804(a)(5)'s admissibility threshold when it did nothing to secure the passenger declarants' attendance or testimony.

Under Rule 804(a)(5), the hearsay proponent must demonstrate a witness's unavailability by showing that the proponent "has not been able" to procure the witness's attendance or testimony "by process or other reasonable means." TEX. R. EVID. 804(a)(5). Other reasonable means is not defined and must be determined on a case-by-case basis. The inquiry is necessarily fact dependent.

The State asks us to adopt a bright-line rule that when a witness has been deported, he or she is *per se* unavailable. We reject that request. First, it should be noted that the State failed to prove that the juvenile witnesses had actually been deported. And, the State took no measures to determine the location of the juveniles. Even if the State had established that the juveniles had been deported, that still does not establish unavailability under Rule 804. The State did not put forth any evidence or argument to demonstrate that procuring the testimony of a deported witness is so inherently difficult or burdensome that it should result in a finding of unavailability in all such cases. Thus, the State here was required to

demonstrate that it undertook "reasonable means" to obtain the witnesses' testimony or attendance, and it failed to do so.

To support its request for a bright-line rule in this context, the State relies on *Mancusi v. Stubbs*, 408 U.S. 204 (1972). In *Mancusi*, the Supreme Court suggested that when a state is incapable of compelling a foreign resident witness' trial attendance, unavailability is shown. *See id.* at 212 (citing *People v. Trunnell*, 96 Cal. Rptr. 810 (Ct. App. 1971)). But the inability to issue a subpoena establishes unavailability merely for attendance purposes. *See id.* (noting that the state "was powerless to compel his attendance at the second trial"). Even in light of *Mancusi*, the Kansas Supreme Court has noted more recently, "Other jurisdictions have held the [s]tate does not meet its burden of proving reasonable efforts to produce a witness for *trial* merely by establishing the witness resides outside the United States and outside the state's subpoena powers." *State v. Keys*, 510 P.3d 706, 709 (Kan. 2022) (emphasis added). Indeed, other jurisdictions require the state to "determine whether the witness might voluntarily return" for trial. *Id.* (first citing *Commonwealth v. Hunt*, 647 N.E.2d 433, 436 (Mass. App. Ct. 1995) and then *State v. Hassapelis*, 620 A.2d 288, 289, 292–93 (Me. 1993)); *see also State v. Iseli*, 458 P.3d 653, 668 (Or. 2020) ("[I]f process via service of a subpoena is not possible because the declarant is beyond the subpoena's reach, a proponent still may need to establish 'unavailability' by showing pursuit of 'other reasonable means.'"). Even if we were to adopt *Mancusi*'s bright-line test or its offshoot that considers the likelihood of the witness voluntarily returning, neither fully disposes of the issue before this Court because both rules concern only trial attendance. Rule 804(a)(5) not only requires an inability to procure trial "attendance," but

also an inability to procure a witness's "testimony." Thus, Texas's unavailability burden under the rules of evidence requires more.

The State posits that the declarants in this case could not be forced (i.e., subpoenaed) back to Texas for trial; that they lacked legal authority to re-enter the United States; and that they could, at most, be invited back. The State relies on the Treaty on Cooperation Between the United States of America and the United Mexican States for Mutual Legal Assistance, Mex.-U.S., Dec. 9, 1987, T.I.A.S. 91-503 (entered into force May 3, 1991) [hereinafter Treaty] to support this argument. However, there may be more applicable options under the Treaty —namely, that the treaty may allow a prosecutor to request the assistance of Mexican authorities to compel testimony within Mexico (presumably, for purposes of obtaining a deposition).[8] Regardless of whether the State could have utilized this treaty to obtain the testimony in question, at the time the prosecutor made the conclusory statement to the trial court that the witnesses were "unavailable," he had not inquired about any possible option of obtaining the witnesses' testimony. The burden of proving unavailability is on the proponent of the hearsay statement. *Vinson*, 252 S.W.3d at 340.

---

[8] "Invited back" under article 9 of the Treaty refers to inviting Mexican nationals to testify in the United States; "[a]rticle 7 allows a prosecutor in the United States to request that a witness in Mexico be compelled by Mexican authorities to appear and testify, but only in Mexico." *People v. Sandoval*, 105 Cal. Rptr. 2d 504, 514 (Cal. Ct. App. 2001) (footnotes omitted); *People v. Herrera*, 232 P.3d 710, 719 n.7 (Cal. 2010) (same). The Treaty has been in force since 1991. While the passenger declarants may not have been amenable to being "invited back" under article 9, article 7 exists. The State could have used or tried to use article 7, but it did neither.

The State further asserts that the requirements for obtaining a visa for the declarants' entry creates a "common sense inference" that obtaining their attendance[9] is unreasonable. It notes that the United States Code contains provisions governing issuance of visas for some victims of trafficking, victims of certain crimes, and witnesses under some limited circumstances. *See* 8 U.S.C. § 1101(a)(15)(T) (setting forth definition of "T" visa for victims of trafficking); 1101(a)(15)(U) (setting forth definition of "U" visa for victims of certain crimes); 1101(a)(15)(S) (setting forth "S" visa requirements for limited group of witnesses). But it suggests that obtaining such visas is so difficult as to make that process categorically unreasonable. However, the State did not provide any factual support or develop a record on that issue in the trial court. In the absence of any facts showing that obtaining visas for foreign witnesses who have been deported is categorically impracticable, we will not presume that it would be unreasonable in all cases for the State to pursue that option. Further, even if we accept the State's argument at face value, Rule 804(a)(5) still requires the State not to have been able to procure a witness's attendance *or testimony* by process or other reasonable means. Looking to Federal Rule of Evidence 804(a)(5), the provision pertaining to the inability to procure testimony "is designed primarily to require that an attempt be made to depose a witness." *Maio v. City of New*

---

[9] The State's brief uses the term "testimony" for this proposition. We assume it meant to use "attendance" because it follows a paragraph discussing the difficulties of obtaining visas for entry into the United States. Trial attendance would certainly require a visa, unless the trial court permitted testimony to be given via teleconferencing, such as by Zoom. If the State meant to use "testimony," it overlooked that testimony includes depositions, which may or may not require visas especially considering the Treaty.

*Haven*, 167 A.3d 338, 348–49 (Conn. 2017) (explaining the Judiciary Committee's notes on Federal Rule of Evidence 804 and the deposition requirement under 804(b)(2)–(4)).[10]

Trying to depose the passenger declarants to obtain their testimony may not have been unreasonable. Chapter 39 of the Texas Code of Criminal Procedure allows, under some circumstances, the State or defendant to depose witnesses and then introduce that deposition testimony at trial. *See* TEX. CODE CRIM. PROC. arts. 39.01–39.151; *Richardson v. State*, 744 S.W.2d 65, 80–82 (Tex. Crim. App. 1987). Article 39.09 expressly permits depositions of nonresident witnesses taken "before any diplomatic or consular officer." TEX. CODE CRIM. PROC. art. 39.09. The trial court may allow either party to depose foreign nationals. *See, e.g.*, *Richardson*, 744 S.W.2d at 80–82. Parties to criminal proceedings have been able to do so for over 130 years. *Adams v. State*, 19 Tex. Ct. App. 250, 260–62 (1885) (discussing how, by statute, the defendant could depose four witnesses who resided in Mexico when their testimony "was material to the defendant" and that such testimony could be received into evidence). Rule 804(b)(1)(B)(iii) expressly admits depositions taken in accordance with Chapter 39 when the deposed witness is unavailable. TEX. R. EVID. 804(b)(1)(B)(iii). Yet, here, the State did not try to depose the passengers either before or

---

[10] "When absence is relied upon as grounds of unavailability," besides former testimony, Federal Rule of Evidence 804(a)(5) requires the hearsay proponent to establish an "inability to take the deposition of the missing witness." *McCormick on Evidence*, § 253 at 757 & n.33 (3d ed. 1984). The federal rule and Texas's rule for an unavailable declarant's statement of personal or family history are identical. *Compare* FED. R. EVID. 804(a)(5)(B), (b)(4), *with* TEX. R. EVID. 804(a)(5), (b)(3).

after their alleged deportation.[11] It cannot be said that the State was unable to procure their testimony by other reasonable means when the State made no inquiry about whether there were any options available for doing so.

The State's final contention is that the "prosecutor clearly lacked any contact information o[f] the juvenile witnesses beyond name, birth date, and nationality." According to the State, absent such contact information, the prosecutor "should be excused from making additional efforts to locate them." Yet during trial, Agent Gonzales testified that he confirmed the juveniles' information with the Mexican Consulate. The record contains no indication that the prosecutor himself, personally, reached out to the consulate. If he had, perhaps he could have obtained the witnesses' contact information. The contact information might have led to obtaining their testimony or attendance. We will never know because the State did nothing to obtain the passengers' attendance or testimony, nor did it even make any inquiry on whether that was possible. Rule 804(a)(5) requires more than nothing. Therefore, the trial court's unavailability finding fell outside the zone of reasonable disagreement and was an abuse of discretion.

### 2. The State did not need to prove that it used good-faith efforts to secure the declarants' trial attendance.

As part of its analysis, the court of appeals stated that "to establish a witness is 'unavailable' under Rule 804(a)(5), the proponent of the testimony must demonstrate that a good-faith effort was made prior to trial to locate and present a witness." *Elsik*, 678

---

[11] As noted above, the record is unclear on whether the State definitively knew that the juvenile declarants were eventually deported. Agent Gonzales commented that the juveniles were "not allowed to stay."

S.W.3d at 367. In this description of the pertinent standard, it erred by relying on the standard for admitting an unavailable witness's *former testimony*. A party seeking to admit at trial an unavailable witness's former testimony (i.e. previously given sworn testimony) ordinarily implicates the Confrontation Clause. *See, e.g.*, *Reed v. State*, 312 S.W.3d 682, 684–86 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd); *Loun v. State*, 273 S.W.3d 406, 419–21 (Tex. App.—Texarkana 2008, no pet.); *Ledbetter v. State*, 49 S.W.3d 588, 591–94 (Tex. App.—Amarillo 2001, pet. ref'd); *Reyes v. State*, 845 S.W.2d 328, 330–32 (Tex. App.—El Paso 1992, no pet.); *Otero-Miranda v. State*, 746 S.W.2d 352, 353–55 (Tex. App.—Amarillo 1988, pet. ref'd). *Otero-Miranda* appears to be the progeny of Texas's good-faith effort requirement under Rule 804(a)(5).

In *Otero-Miranda*, the court of appeals determined whether two witnesses who previously testified in a capital murder trial were unavailable under Rule 804. *Otero-Miranda*, 746 S.W.2d at 353–55. The court of appeals looked to the Federal Rules of Evidence for guidance. *Id.* at 354-55. It stated that "[t]he federal rule draftsmen intended that the confrontation clause standard set forth in *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), also be used to measure the 'unavailability' requirement of Rule 804(a)(5)." *Id.* at 354 (citing *United States v. Kehm*, 799 F.2d 354, 360 (7th Cir. 1986)). Using this intent, the court of appeals held that the Rule 804(a)(5) unavailability proponent must make "a good[-]faith effort to obtain the witness' presence at trial." *Id.* at 354 (citing *Barber*, 390 U.S. at 724–25).

But *Barber* discussed the common-law exception to the confrontation clause. *See Barber*, 390 U.S. at 722–26. The Supreme Court recognized that "there has traditionally

been an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant[,] which was subject to cross-examination by that defendant." *Id.* at 722 (citing *Mattox v. United States*, 156 U.S. 237, 242–43 (1895)). *Barber* further clarified that the unavailability exception to the confrontation clause required "prosecutorial authorities [to] have made a good-faith effort to obtain [the witness'] presence at trial." *Id.* at 724–25. So, the good-faith effort imposed by *Otero-Miranda* and later Texas courts of appeals is rooted in the Sixth Amendment's exception for former testimony.[12]

The confrontation clause is not before us in this case.[13] And relying exclusively on the former-testimony exception under the Federal Rules of Evidence to import a good-faith effort requirement is misguided because statements of personal or family history are dissimilar to former testimony. *See United States v. Yida*, 498 F.3d 945, 950 (9th Cir. 2007) ("[Federal] Rule 804(b)(1) [the former testimony exception] implements the command of the Sixth Amendment's Confrontation Clause . . . ."). Under the federal rules, former

---

[12] Even though the Sixth Amendment's jurisprudence has changed since *Otero-Miranda*, the amendment "is most naturally read as a reference to the right of confrontation at common law, admitting only those exceptions established at the time of the founding." *Crawford v. Washington*, 541 U.S. 36, 54 (2004) (citing *Mattox*, 156 U.S. at 243). One such exception is "condition[ing] the admissibility of an absent witness's examination on unavailability and prior opportunity to cross-examine." *Id.* The good-faith effort precondition to admitting the prior testimony of an unavailable witness appears to remain intact because in *Crawford* the Supreme Court favorably cited *Barber*. *See id.* at 57–59 ("Even where the defendant had [an adequate opportunity to cross-examine the witness], we excluded the testimony where the government had not established unavailability of the witness.") (citing *Barber*, 390 U.S. at 722–25).

[13] We granted review on Rule 804 grounds, not the confrontation clause. Moreover, the confrontation clause's "primary object" is testimonial hearsay. *Crawford*, 541 U.S. at 53. No such statements are before this Court.

testimony is only admissible if the proponent cannot, by process or other reasonable means, procure "the declarant's *attendance*." FED. R. EVID. 804(a)(5)(A), (b)(1) (emphasis added). Thus, the federal rules' former-testimony exception necessarily requires good-faith effort to comply with the confrontation clause. *See Crawford*, 541 U.S. at 68 (holding that testimonial evidence "applies at minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations"); *Barber*, 390 U.S. at 724–25 ("In short, a witness is not 'unavailable' for purposes of the [former-testimony] exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial."); *see also Yida*, 498 F.3d at 950.

The hearsay at issue here was nontestimonial—it was admitted as statements of personal or family history. The confrontation clause is not implicated. As the Supreme Court said: "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law." *Crawford*, 541 U.S. at 68. Accordingly, the State did not need to satisfy the confrontation clause's good-faith effort showing as a predicate to admitting the statements of personal or family history. Under the circumstances, Rule 804(a)(5)'s text squarely outlined the State's burden. As previously discussed, the State did not meet that burden. Thus, the trial court abused its discretion when it admitted the passenger declarants' hearsay.

### III.   Conclusion

For the foregoing reasons, we conclude that: (1) under the circumstances, the prosecutor's representations to the trial judge did not constitute reliable evidence upon which a Rule 104(a) admissibility determination could be made; and (2) the State failed to

lay the unavailability predicate under Rule 804(a)(5) absent evidence that it was unable, by process or other reasonable means, to procure the declarants' attendance or testimony. Therefore, we affirm the judgment of the court of appeals.

Delivered: November 27, 2024

Publish